# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## ATHENS DIVISION

| | |
|---|---|
| THE TURFGRASS GROUP, INC., and UNIVERSITY OF GEORGIA RESEARCH FOUNDATION, INC. <br><br> Plaintiffs <br><br> vs. <br><br> CAROLINA FRESH FARMS, INC. and CAROLINA FRESH FARMS, LLC f/k/a CAROLINA FRESH FARMS, INC., and JOHN A. FOGLE, SR., <br><br> Defendants | CIVIL ACTION FILE NO.: 3:09-cv-125 (CDL) <br><br> JURY DEMAND |

## COMPLAINT

**COME NOW** the Plaintiffs, The Turfgrass Group, Inc. (hereinafter referred to as "Turfgrass") and the University of Georgia Research Foundation, Inc. (hereinafter referred to as "UGARF"), and for their Complaint against the Defendants, Carolina Fresh Farms, Inc. and Carolina Fresh Farms, LLC f/k/a Carolina Fresh Farms, Inc., and John A. Fogle, Sr. (hereinafter referred to as "Defendants") state as follows:

### JURISDICTION AND VENUE

1.   Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §1331, in that one or more of Turfgrass' and UGARF's claims arise under the laws of the United States, as well as 28 U.S.C. §1338, granting district courts original jurisdiction over any civil action regarding plant variety protection and federally registered trademarks. Additionally, supplemental jurisdiction is proper in this Court, pursuant to 28 U.S.C. §1367, over UGARF's and Turfgrass' entire non-federal question claims, such that they form part of the same case or controversy.

2.   Venue is proper in this judicial district pursuant to 28 U.S.C. §1391, in that a substantial part of the events giving rise to the claims occurred in this district. As stated in Article 13 of the Sublicense Agreement between Turfgrass and Defendants, herein attached, **Exhibit A** reads as follows:

1

> This agreement and all amendments, modifications, alterations, or supplements hereto, and the rights of the parties hereunder, shall be construed under and governed by the laws of the State of Georgia applicable to agreements made and fully performed within the State of Georgia.

## PARTIES

3. Plaintiff, Turfgrass, is a corporation organized and existing under the laws of the State of Georgia, with its principal place of business located at 329 Stiles Road, SW., Cartersville, Bartow County, Georgia, 30120. Turfgrass is the authorized sub-licensee of TifBlair- with such sublicense having been granted to Turfgrass by UGARF.

Plaintiff, UGARF, is a Georgia nonprofit corporation with its main place of business located in The Boyd Graduate Studies Research Center, Athens, Georgia 30602-7411. UGARF holds the license to TifBlair-, a novel variety of centipede grass issued to it by the United States Department of Agriculture, Agriculture Research Service (hereinafter referred to as "USDA-ARS").

4. The Defendants, (Carolina Fresh Farms, Inc., and Carolina Fresh Farms, LLC and John A. Fogle, Sr.) are in the agricultural business and produce, market, sell, and distribute centipede grass on the open market with their principal place of business at 7500 Savannah Highway, Neeses, South Carolina, 29107. The Defendants do not qualify for exceptions set forth at 7 U.S.C. §2543. The Defendant Carolina Fresh Farms, Inc. may be served through its Registered Agent for service of process, Andy Fogle, at the address of 7500 Savannah Highway, Neeses, South Carolina, 29107, or, the Defendant may waive service after notice of such request is sent to Defendant via mail. The Defendant is subject to the jurisdiction of this Court. The Defendant Carolina Fresh Farms, LLC f/k/a Carolina Fresh Farms, Inc. may be served through its Registered Agent for service of process, Andy Fogle, at the address of 7500 Savannah Highway, Neeses, South Carolina, 29107, or the Defendant may waive service after notice of such request is sent to Defendant via mail. The Defendant is subject to the jurisdiction of this Court. The Defendant, John A. Fogle, Sr., may be served at his business address of 7500 Savannah Highway, Neeses, South Carolina, 29107, or the Defendant may waive service after notice of such request is sent to Defendant via mail. The Defendant is subject to the jurisdiction of this Court.

## FACTS

5. Turfgrass is in the business of producing, marketing, licensing, and selling centipede grass nationally through a variety of organizations, including wholly owned subsidiaries, joint ventures, sales representatives, and independent dealers. In the course of its business, and only after the investment of substantial research, time, and expense, USDA-ARS gained ownership and all exclusive rights of centipede grass having favorable traits known and identified as TifBlair. USDA-ARS has exclusively granted its rights to UGARF and has given UGARF the option to sublicense these rights to third parties. Since USDA-ARS has exclusively granted these rights to UGARF and has given UGARF the option to sublicense these rights to third parties, any entity that produces or sells this variety without a sublicense from UGARF which authorizes such, would be infringing on UGARF's PVP rights.

6. The primary purpose of the Plant Variety Protection Act, 7 U.S.C. §2321 *et seq.*, is to encourage the development and availability of new and beneficial crop varieties by legally protecting intellectual property rights in such varieties for those who breed, develop, or discover such crops, thereby promoting progress in agriculture in the public interest.

7. In order to protect its interest and investment in the centipede grass variety known as TifBlair, Wayne W. Hanna, on behalf of USDA-ARS, applied to the United States Secretary of Agriculture for plant variety protection under the Plant Variety Protection Act.

8. On June 14, 2001, Plant Variety Protection Certificate Number 9600255 was issued to the USDA-ARS for the centipede grass known and identified as TifBlair. The term of the certificate is twenty (20) years. A true and accurate copy of the Plant Variety Protection Act application and Certificate Number 9600255 issued by the United States Secretary of Agriculture is attached to this Complaint and Jury Demand as **Exhibit B** and is incorporated herein by reference.

9. Subsequently, USDA-ARS issued a license to UGARF for Plant Variety Protection Certificate Number 9600255. See **Exhibit C** attached hereto. Thus, UGARF has standing to bring action to protect the PVPA Certificate from any and all violations or threats thereto.

10. Subsequently, UGARF issued a Seed Supply and Sublicense Agreement to Turfgrass for Plant Variety Protection Certificate Number 9600255 regarding TifBlair; and, such grants Turfgrass exclusive rights in the germplasm. See **Exhibit D** attached hereto.

3

11. By virtue of the issuance of the PVP Certificate and the above-mentioned license and sublicense, TifBlair can be grown, offered for sale, marketed, or sold only by or with Turfgrass' permission, in accordance with the Plant Variety Protection Act and the sublicense issued to Turfgrass. Turfgrass owns and uses the trade mark, TifBlair, to identify and distinguish its company's centipede grass from other's products.

12. The trademark, *TifBlair-The Certified Centipede*, is registered on the United States Patent and Trademark Office's Principal Register, thereby giving Turfgrass the exclusive right to use the trademark in commerce in connection with its company's centipede products. The trademark, *TifBlair-The Certified Centipede,* (Registration Number 3430352) was issued by the United States Patent and Trademark Office on May 20, 2008. See **Exhibit E** attached hereto.

13. Turfgrass' sublicensees, among other contractual obligations, are required to pay a license fee and royalties to Turfgrass for each unit of TifBlair grass sold. Subsequent to this, Turfgrass will remit appropriate royalties to UGARF. Authorized centipede grass dealers are required to provide notice that TifBlair is protected by the Plant Variety Protection Act.

14. Upon information and belief, the Defendants are marketing, offering for sale, and selling the centipede grass variety known as TifBlair without a PVP notice, as common centipede and as Carolina Green, all without authority from Turfgrass.

15. Upon information and belief, the Defendants' infringing activities were undertaken with full knowledge and intent and with notice that such activities were in violation of Turfgrass' trademark rights and USDA-ARS's, UGARF's and Turfgrass' Plant Variety Protection rights.

16. Turfgrass has not granted permission to the Defendants to sell or market the centipede grass variety known as TifBlair in this manner. Furthermore, Turfgrass terminated its contractual relationship with Defendants on or about November 10, 2006 because of contractual breach.

17. Turfgrass granted permission to the Defendant Carolina Fresh Farms, Inc. to use the centipede grass variety trademark, *TifBlair-The Certified Centipede*, in connection with the sale and marketing of Turfgrass' products, but only during the course of the contractual arrangement between the parties; and, strictly under the terms of the contract between the parties. Turfgrass did not grant any such permission to Defendants Carolina Fresh Farms, LLC or John A. Fogle, Sr.

4

18. Pursuant to 15 U.S.C. §1116, Turfgrass is entitled to a permanent injunction according to the principles of equity and upon such terms as the Court may deem reasonable, to prevent Defendants' continued sale of TifBlair. Without such injunction, Plaintiffs will suffer immediate and irreparable harm not otherwise quantifiable in money damages.

### COUNT I - INFRINGEMENT OF PLANT VARIETY PROTECTION ACT

19. Each and every allegation set forth in the above-numbered paragraphs is hereby incorporated by reference just as is if it were explicitly set forth hereunder.

20. Under 7 U.S.C. §2541 *et seq.*, Turfgrass has the exclusive sublicense to sell, market, and distribute the centipede grass variety known and identified as TifBlair.

21. The Defendants have infringed upon Turfgrass' rights in violation of 7 U.S.C. §2541 by offering for sale, selling, marketing, and distributing TifBlair without authorization. The Defendants sold centipede grass with no description and name in sod-form and as Carolina Green. Every sale by the Defendants required notice that the centipede grass was a protected variety pursuant to the Plant Variety Protection Act at 7 U.S.C. §§2541 (a)(6) and 2568(a)(4). In spite of the Defendants having knowledge, the variety was so protected by the Plant Variety Protection Act, no such notice was provided. Furthermore, the Defendants had a contractual obligation to give the notice on all sales. Each of these sales by Defendants was a separate violation of Turfgrass' rights for which Defendants are liable to Plaintiffs.

22. Pursuant to 7 U.S.C. §2564, Turfgrass and UGARF are entitled to damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the variety by the Defendants, together with interest and costs. Further, Turfgrass' and UGARF's damages should be increased up to three times the amount determined, owing to Defendants' full knowledge and notice that such activities constituted infringement. Pursuant to 7 U.S.C. §2565, Turfgrass and UGARF are entitled to an award of reasonable attorney's fees in light of the exceptional circumstances of this case and the Defendants' intentional and elaborate scheme to sell TifBlair under a false name, market it in a false way and made substantial efforts to cover up these illegal activities.

### COUNT II - INFRINGEMENT OF LANHAM ACT

23. Each and every allegation set forth in the above-numbered paragraphs is hereby incorporated by reference just as if it were explicitly set forth hereunder.

24. Upon information and belief, the Defendants are illegally selling and marketing centipede grass using the federally registered trademark *TifBlair-The Certified Centipede* owned by Turfgrass, and is falsely designating the centipede grass variety known as TifBlair as common centipede and Carolina Green.

25. By falsely designating the origin and variety of its sales of common centipede and Carolina Green, and by making false and misleading representations of fact in the selling and marketing of it, the Defendants have violated 13 U.S.C. §1125.

26. Defendants' use of Turfgrass' *TifBlair-The Certified Centipede* trademark, Defendants' false designation of *TifBlair-The Certified Centipede* as common centipede or as Carolina Green, and the Defendants' false and misleading description of fact in the selling of common centipede and Carolina Green is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Turfgrass, or as to the origin of its centipede grass, or as to the sponsorship or approval of the Defendants' goods, services, or other commercial activities by Turfgrass.

27. Further, the Defendants' false designations and misleading descriptions misrepresent the nature, characteristics, qualities, or geographical origin of the centipede grass being sold.

28. Pursuant to 15 U.S.C. §1117, Turfgrass and UGARF are entitled to damages equal to the value of the Defendants' profits, Turfgrass' lost profits, any damages sustained by Turfgrass and UGARF, and costs of the action. Further, in light of the exceptional circumstances of this case, Turfgrass and UGARF are entitled to a sum above the amount found as actual damages, not exceeding three times such amount, as well as an award of reasonable attorney's fees.

29. Pursuant to 15 U.S.C. §1116, Turfgrass is entitled to a permanent injunction, according to the principles of equity, and upon such terms as the Court may deem reasonable, to prevent the Defendants' continued unauthorized use of Turfgrass' trademark. Without such injunction, Turfgrass will suffer immediate and irreparable harm not otherwise quantifiable in monetary damages.

### COUNT III – BREACH OF CONTRACT

30. Each and every allegation set forth in the above-numbered paragraphs is hereby incorporated by reference just as if it were explicitly set forth hereunder.

31.     On or about the 28th day of February, 2001, Plaintiff and Defendants Carolina Fresh Farms, Inc. entered into a written agreement, a copy of which is attached hereto as **Exhibit A** and made a part hereof. This contract was signed by Defendant John A. Fogle, Sr. as President of that corporation. Based upon information and belief Plaintiffs show that said corporation did not exist and that Defendant John A. Fogle, Sr. did business as such corporation and continued such business as Carolina Fresh Farms, LLC.

32.     On or about November 10, 2006, UGARF and Turfgrass terminated the Sublicense Agreement for *TifBlair-The Certified Centipede* with the Defendants for cause as detailed below:

   a.   Cause according to Article 12.1 (c), "failure of Sublicensee to maintain production fields consistent with certification and production protocol." The Agreement clearly establishes that TifBlair must be produced and sold only as certified sod according to the definitions in Articles 1.1 and 1.3. Further, Article 4.4 requires Sublicensee to "implement and monitor quality assurance provisions to assure and maintain the genetic purity of the Sublicensed Product according to the specifications for production of the official crop certifying agency…" The Defendants's status of all fields in the certification program being rejected is a breach of these terms of the Agreement.

   b.   Cause according to Article 8.2, "Sublicensee shall mark all invoices and/or shipments of Sublicensed Product with the appropriate certification tags…" Sales of TifBlair sod without certification tags/certificates are strictly prohibited, and this breach is compounded by the sale of TifBlair sod from production fields that had not passed certification inspections.

Additionally, Defendants failed to pay the royalties and sums required under the Sublicense Agreement; and, thus, forfeited its rights under Article 12.3 of the Agreement; thus, the production fields of Defendants were required to be destroyed immediately. Based upon information and belief, Plaintiffs show Defendants did not destroy said fields thereby breaking the contract agreement. Plaintiffs show Defendants have continued to produce TifBlair and sell the same as designated hereinabove; and, such acts were and are a continuing breach of the Contractual Agreement.

7

33.   By reason of Defendants' breach of said contract as herein alleged, Turfgrass has suffered damages in a sum in excess of $75,000.00; and, Defendants are liable to Turfgrass therefore.

### JURY DEMAND

34.   Turfgrass and UGARF demand a jury trial regarding all issues of fact that may arise herein.

**WHEREFORE**, Turfgrass and UGARF request that service be issued in accordance with the terms of law and that Defendants be served and commanded to respond in accordance with the terms of law to this Complaint. Furthermore, Plaintiffs demand judgment against the Defendants as prayed for herein in both damages and equity.

Respectfully submitted this 28th day of October, 2009.

| NOLAN LAW GROUP, PLLC | PERRY & WALTERS, L.L.P. |
|---|---|
| By: /s Duff Nolan<br>Duff Nolan<br>SCRN: 89125<br>*Counsel for Plaintiff*<br>  *Turfgrass Group, Inc.*<br>Post Office Box 68<br>Stuttgart, AR 72160<br>(870) 673-3200 | By: /s Richard W. Fields<br>Richard W. Fields<br>Georgia Bar No. 259650<br>*Local Counsel for Plaintiff*<br>  *Turfgrass Group, Inc.*<br>Post Office Box 71209<br>Albany, GA 31708<br>(229) 439-4000 |

COOK, NOELL, TOLLEY & BATES, LLP

By: /s Edward D. Tolley
  Edward D. Tolley
  Georgia Bar Number: 714300
  Ronald E. Houser
  Georgia Bar Number: 369236
  *Counsel for Plaintiff UGARF*
  Post Office Box 1927
  Athens, GA 30603
  (706) 549-6111

8