IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | | |
|---|---|---|
| The Turfgrass Group, Inc. and the University of Georgia Research Foundation, Inc. | ) ) ) | Civil Action No.:5:10-cv-00849-MBS |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| Carolina Fresh Farms, Inc. and Carolina Fresh Farms, LLC f/k/a Carolina Fresh Farms, Inc., and John A. Fogle, Sr., | ) ) ) ) ) | REPLY |
| Defendants, Third-Party Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| Zelotis Wofford and Billy Self, | ) ) | |
| Third-Party Defendants. | ) ) | |

On or about November 9, 2011, the Defendants/Third-Party Plaintiffs (hereinafter "Defendants") served a subpoena *duces tecum* on Sod Atlanta, Inc., (hereinafter "Atlanta") and North Georgia Turf, Inc., (hereinafter "Turf") seeking the production or inspection of "documentation demonstrating royalty rates and/or royalty schedules for all types of turfgrass sold between 2006 to the present." [ECF Entry # 105-1 and 106-1]. The entities Atlanta and Turf (herein collectively "movants"), through the undersigned counsel, filed motions to quash the subpoenas on November 24, 2011. [ECF Entry # 105 and 106]. Defendants filed a Response in Opposition to the Motions to Quash on December 12, 2011. Movants now file this Reply.

1

BACKGROUND

Plaintiffs/Third-Party Defendants (hereinafter "Plaintiffs") filed a Complaint for infringement of a protected plant variety in violation of the Plant Variety Protection Act ("PVPA"), 7 U.S.C. § 3541 *et seq.*, trademark infringement in violation of the Lanham Act, 13 U.S.C. § 1125, and breach of contract in the United States District Court for the Middle District of Georgia, Athens Division, on October 28, 2009. The case was transferred, pursuant 28 U.S.C. § 1406(a), to the United States District Court for the District of South Carolina, Orangeburg Division, on April 6, 2010.

Plaintiff University of Georgia Research Foundation ("UGARF") holds the license to TifBlair, a variety of centipede grass, as granted exclusively to it by the United States Department of Agriculture, Agriculture Research Service ("USDA-ARS"). Plant Variety Protection Certificate ("PVPC") Number 96-00-255 was issued to the USDA-ARS for TifBlair on June 14, 2001, and USDA-ARS subsequently issued a license to UGARF for the PVPC. Plaintiff The Turfgrass Group, Inc. ("Turfgrass") is the authorized sublicensee of TifBlair per the sublicense granted it by UGARF. (ECF Entry # 1, Ex. A). The trademark *TifBlair-The Certified Centipede* is registered in the United States Patent and Trademark Office's Principal Register, and Turfgrass owns and uses said trademark. (ECF Entry # 1, Ex. E)

It is alleged that Defendants are marketing, offering for sale, and selling TifBlair centipede grass, without a plant variety protection notice, as common centipede and as "Carolina Green" without authority from Turfgrass, in violation of the Plant Variety Protection Act and the Lanham Act.

In the Motions to Quash, movants allege that neither are a party to the current law suit and

2

that neither own a license to TifBlair Centipede although both have grown TifBlair Centipede for Turfgrass in the past. The motions further state that Defendants request would require the movants to disclose proprietary and trade secret information, namely price, profit margin, and negotiated contract rates for all varieties of turfgrass grown and sold which is wholly unrelated to the allegations in the law suit.

In opposition to the motions, Defendants present the following arguments: (1) that movants failed to confer with opposing counsel as required by Local Civil Rule 7.02 and, therefore, the motion should be denied; (2) that the royalty rates paid by movants is relevant to the reasonable royalty rate used by Plaintiffs' expert with regard to the measure of damages; (3) that Defendants contend external market forces have resulted in the decline of the sale of TifBlair, not the alleged conduct of the Defendants and that the requested documents may show an "economic trend" throughout the industry; (4) that the movants' profit margins for the sale of centipede grass is relevant to disputing Plaintiffs' expert's claim that Defendants made a net profit of 46%; (5) that the documents sought are not confidential; and (6) that no burden exists.

For the reasons set forth below, movants deny the Defendants' arguments and request that this court grant the Motions to Quash.

ARGUMENT

### I.     Local Civil Rule 7.02 does not require counsel to consult prior to the filing of the Motions to Quash Subpoenas

Counsel for the Defendants maintains that the movants have a duty to consult with opposing counsel in an attempt to resolve the issue prior to having filed the motions to dismiss and, because the motions to quash did not contain a certification of compliance with Local Civil Rule 7.02, the motions should be dismissed.

As an initial matter, the Response in Opposition states that "Defendants became aware [following depositions] that [Plaintiffs] were not producing certain information that would otherwise be responsive to written discovery with the excuse that materials were in the possession of a third-party, 'Sod Atlanta Inc.' and 'North Georgia Turf, Inc.'".   However, counsel fails to set forth what information was allegedly in the Plaintiffs' possession that was responsive to a discovery request that was being withheld on a claim that it was in a third-parties' possession.  Therefore, the Plaintiffs and the movants would ask the court to strike said allegations from the Response and not consider the allegations in ruling on this motion.

In response to the allegations that counsel for the Plaintiffs, Duff Nolan, suggested to opposing counsel that the information sought be obtained by a "friendly" subpoena, it is admitted that opposing counsel raised the subject of obtaining royalty and profit information from movants.  Attorney Nolan informed counsel that the information would not be produced by the non-parties, but if counsel wanted to pursue the matter he could send the subpoenas to Mr. Nolan who would ensure that they were delivered to the movants.   This was only a courtesy extended to prevent opposing counsel from having to formally serve the subpoenas.

As to the allegation regarding lack of complying with Local Civil Rule 7.02, said rule provides in part that there is no duty to consult before filing dispositive motions.   Local Civil Rule 7.02(D).   The present motions involve subpoenas issued to non-parties.   If the court grants the motions to quash, the matter will be ended as to the non-parties and, therefore, the motion is dispositive in nature and there is no duty to consult.   Cf. Trammell v. Anderson College, 8:05-3213-HMH-WMC, 2006 WL 1997425, at *2 (D.S.C. July 17, 2006) (court reminding parties of duty to consult regarding discovery dispute where defendant issued subpoena to plaintiff's

consultant and plaintiff moved to quash on grounds that information sought was protected as work-product and ruling favorably on motion was not dispositive as to moving parties).

## II.     The requested information is not relevant to the issues in this lawsuit and not necessary to defend the allegations of damages.

Defendants' arguments two (2) through four (4) in opposition to the motions to quash, as set forth above, relate to Defendants' allegations that the materials sought is "evidence of royalty rates for turfgrass within the industry."  [ECF Entry #113, p. 3].  Defendants purport that said evidence is necessary to defend the Plaintiffs' expert's report on damages, who has "opined that the reasonable royalty rate should be 53% of the sale . . .[whereas] Defendants' expert has opined that the reasonable royalty rate is between 4% to 7% of the total sale."  Id.  Defendants maintain that the requested documents from the non-parties "would likely corroborate Defendants' position of reasonable royalty rates in the industry."  Id.  Defendants' arguments are in error.

Plaintiffs' expert's report states that the established royalty rate as provided for by the sublicensing agreement between Plaintiffs and Defendants was 7% of the gross sales from TifBlair.  [ECF Entry # 113-7, p. 4].  Moreover, as cited by the Defendants, there is deposition testimony regarding various established royalty rates for different turfgrass products ranging from five (5) to ten (10) percent.  [ECF Entry #113-10, p. 1, lines 5-6, 14; p. 2, lines 1-4; p. 3, lines 19-25; ECF Entry # 113-11, p. 4, lines 1-7]

However, contrary to Defendants' position, the 56% total reasonable royalty rate set forth in the expert's report was determined by combining the established 7% royalty rate *along with* an additional percentage calculated to "disgorge the defendant of its 'unjust enrichment'.  [ECF Entry # 113-7, p. 9].  The expert report opines that "*additional royalty* to be combined with the established royalty should fairly compensate the [patent] holder for the damages sustained by the

5

infringement of its rights . . ., the loss of quality control, loss of monopoly, loss of anticipated convoyed [sic] sales, market confusion and damage to reputation from the illegal marketing, offering for sale and sale of [protected] centipede grass variety TifBlair."  [ECF Entry # 113-7, p. 8].

In reaching a determination of the additional royalty to be combined with the established royalty rate, the expert considered the fifteen factors set forth in <u>Georgia-Pacific Corp. v. United States Plywood Corp.</u>, 318 F. Supp. 1116 (SDNY 1970).  The expert candidly noted that some of the factors may not be relevant, that the level of importance of a particular factor is based upon the facts and circumstances of this case, and that "there is no formula by which these factors can be rated precisely in order of their relative importance or by which their economic significance can be automatically transduced into their pecuniary equivalent and in light of the artificial nature of the hypothetical negotiation, I have quantified the royalty adjustment as a matter of 'just and reasonable inference'. . . ."  [ECF Entry # 113-7, p. 8].

Obtaining the actual established royalty rates entered into between movants and its licensors/patentees provides no beneficial information to the Defendants when the parties know the established royalty rate agreed to by the parties *in this case* and taking into account that there is evidence that the established royalty rates for various turfgrass products range from five (5) to ten (10) percent.  However, by denying the motions to quash and requiring the movants to produce the requested documents, the movants will be required to divulge evidence of its contract negotiations and established royalty rates for all of its turfgrass products to its competitor.  The potential harm to the movants in producing the documents significantly outweighs the benefits, if any at all, that the Defendants may receive in light of the rates already known.  Therefore, Defendants' desire to

6

obtain evidence of movants' established royalty rates is insufficient to warrant production of the requested documents and, therefore, the Motions to Quash should be granted.

Defendants also argue that movants' pricing and profit margin of all grasses sold is directly relevant in determining damages because these companies operate as "the farm of Turfgrass Group" and "the amount of seed and sod they sell has a significant impact on the profitability of the Turfgrass Group."  [ECF Entry # 113, page 4].

Financial documents relative to Turfgrass have been provided in response to written discovery requests.  Moreover, Defendants have failed to explain how the profits from the sale of seed and sod from farms in which some of the principals of Turfgrass are involved relates to damages sustained by the Plaintiffs for patent infringement by the Defendants in South Carolina for the sale of TifBlair.  Once again, the movants will be required to divulge evidence of its pricing and profits for all of its turfgrass products to its competitor.  The potential harm to the movants in producing the documents significantly outweighs the benefits, if any at all, that the Defendants may receive in light of the relevancy of the information sought.  Therefore, Defendants' desire to obtain evidence of movants' pricing and profits from the sale of turfgrass is insufficient to warrant production of the requested documents and, therefore, the Motions to Quash should be granted.

Defendants maintain that external forces, such as the economic downturn, have resulted in lost profits rather than Defendants' alleged conduct.  As a result of their alleged defense, Defendants maintain that they should be able to obtain documents relative to the sale of grass by the movants as evidence of such a decline.  Again, Plaintiffs have produced financial records in response to discovery requests demonstrating royalties received from the sale of its products by its licensees including monthly and annual sales of TifBlair products by Plaintiffs' licensees.  In fact,

7

Defendants' own expert has relied and opined regarding the availability of the financial information and issued an opinion that Turfgrass's sublicensee sales in North Carolina, Georgia, and South Carolina all show a decline after 2006. [ECF Entry # 113-8, pp. 5, 8]. Accordingly, Defendants have failed to establish how the specific sales information obtained from two licensees will provide any additional information from what has already been produced and analyzed by Defendants' expert.

The potential harm to the movants in producing the documents significantly outweighs the benefits, if any at all, that the Defendants may receive in light of the information produced. Therefore, Defendants' desire to obtain evidence of movants' sales of turfgrass is insufficient to warrant production of the requested documents and, therefore, the Motions to Quash should be granted.

Defendants argue that they are entitled to receive evidence of the movants profit margins for the sale of centipede grass in order to dispute claims by the Plaintiffs' expert that the Defendants made a net profit of 46% based on the infringement. [ECF Entry # 113, pp. 4-5].

Plaintiffs' expert's report indicates that he used a report titled, "*Projected Cost and Returns from Centipede Sod Production in Louisiana*" which calculated net returns per acre of common centipede grass as part of his methodology in calculating the estimated net profit from the continued sale of TifBlair in 2007, 2008, 2009, and 2010. [ECF Entry # 113-7, page 8]. Defendants' expert has opined as to the hypothetical net profits the Defendants would have realized from the continued sale of TifBlair. [ECF Entry # 113-8, p. 7]. Defendants have failed to present any argument or evidence from their expert indicating that he would not be able to project or that his opinion would be jeopardized without having access to the requested information. Moreover, Defendants have

presented no evidence that Defendants' production and sales are in any way comparable to that of the movants production and sales.

The movants will be required to divulge evidence of its net pricing for all of its turfgrass products. The potential harm to the movants in producing the documents significantly outweighs the benefits, if any at all, that the Defendants may receive in light of the fact that their expert has rendered an opinion regarding the estimated net profit. Therefore, Defendants' desire to obtain evidence of movants' net profit is insufficient to warrant production of the requested documents and, therefore, the Motions to Quash should be granted.

### III.     The requested information is confidential.

Defendants seek to discover royalty rates that are negotiated between the movants and their licensees for all turfgrass products sold by the movants. The royalty rates are variable as evidenced from the discussions set forth above and those rates in part determine the overall profitability of the company. Defendants have failed to advance any reasonable argument as to why the established royalty rates of the movants would be relevant in the case at hand since the parties know the established royalty rate in this case as discussed above. However, the risk of potential disclosure of the non-parties' business records has the potential to affect their ability to negotiate future royalty rates. Moreover, said disclosure of the requested information has the potential to be disclosed to movants' competitors, which could affect movants' ability to negotiate favorable royalty rates. In light of the potential harm that could result with no benefit to the Defendants, the movants respectfully request that the Motion to Quash be granted.

### IV.     An undue burden would be placed on the movants to comply with the subpoena.

Defendants argue that movants' claim of undue burden does not exist because the records

are maintained in the same building as Turfgrass. However, it is unduly burdensome for the movants, who are non-parties to this action, to expend the money and effort to compile, copy and produce contractual and financial information for all of its turfgrass products when, as discussed above, the information sought is either irrelevant or would not provide any useful information to the Defendants or any information not already in Defendants' possession. Therefore, the movants respectfully request that the Motions to Quash be granted.

## CONCLUSION

For the reasons set forth above, the movants respectfully request that the Motions to Quash Subpoenas be granted.

*Signature Blocks Appear on Following Page*

RILEY POPE & LANEY, LLC
By: s/Damon C. Wlodarczyk
Damon C. Wlodarczyk
District Court #9487
*Local Counsel for Plaintiffs,*
*The Turfgrass Group, Inc. and UGARF*
Post Office Box 11412
Columbia, SC 29205
Telephone (803) 799-9993
Facsimile (803) 239-1414
**damonw@rplfirm.com**

NOLAN LAW GROUP, PLLC
Duff Nolan, *Pro Hac Vice*
SCRN 89125
*Counsel for Plaintiffs,*
*The Turfgrass Group, Inc. and UGARF*
Post Office Box 68
Stuttgart, AR 72160
Telephone (870) 673-3200
Facsimile (870) 673-6996
**dn@nolanlawgrouppllc.com**


PERRY & WALTERS, LLP
Richard W. Fields, *Pro Hac Vice*
Georgia Bar No. 259650
*Counsel for Plaintiffs*
*The Turfgrass Group, Inc. and UGARF*
Post Office Box 71209
Albany, GA 31708
Telephone (229) 439-4000
Facsimile (229) 432-9967
**rfields@perrywalters.com**